| | |
|---|---|
| DISTRICT COURT, MESA COUNTY, COLORADO<br>125 North Spruce Street, Grand Junction, CO 81501<br>(970) 257-3625 | |
| **Plaintiffs:** MARGARET COLEMAN, and SLATNER, LLC, a Colorado limited liability company, and 710 ARROWEST, LLC, a Colorado limited liability company,<br><br>v.<br><br>**Defendants:** CORRECYCLING, INC., a Colorado corporation, KEN BURNS, ALEXIA BURNS;<br><br>NATIONWIDE INSURANCE COMPANY d/b/a SCOTTSDALE INSURANCE COMPANY;<br><br>BEAZLEY SERVICES, INC. USA, SYNDICATES 623 AND 2623 at Lloyds, London; and<br><br>AMERICAN FAMILY INSURANCE COMPANY | DATE FILED: August 22, 2023 6:10 PM<br>FILING ID: 63A7A726F8F97<br>CASE NUMBER: 2023CV30340<br><br><br><COURT USE ONLY> |
| Attorney for Plaintiffs:<br>Joseph Coleman (#6856)<br>COLEMAN & QUIGLEY, LLC<br>2454 Patterson Road, Suite 200<br>Grand Junction, CO 81505<br>Phone: (970) 242-3311<br>Email: joe@cqlawfirm.net | Case No. 2023CV<br><br>Division: |
| **COMPLAINT** | |

Plaintiffs, Margaret Coleman ("Owner"), Slatner, LLC ("Landlord"), and 710 Arrowest, LLC ("710"), by their attorneys, Coleman and Quigley, LLC (collectively "Plaintiffs"), set forth the following claims against the Defendants, CORRecycling Inc. ("Tenant"), Ken Burns, Alexia Burns (collectively "Guarantors"), Nationwide Insurance Company d/b/a Scottsdale Insurance Company ("Nationwide"); Beazley Services Inc. USA, Syndicates 623 and 2623 at Lloyds, London (collectively "Beazley") and American Family Insurance Company ("American").

1

## I. GENERAL ALLEGATIONS

A. <u>Parties, Jurisdiction, and Venue.</u>

1.1 Plaintiff, Margaret Coleman is a resident of Mesa County and Owner of the following described property:

> LOT 19 BLK 1 ARROWEST COMMERCIAL SUB SEC 31 1N 1W, Grand Junction, Mesa County, State of Colorado, also known as 710 Arrowest Road, Grand Junction, CO, 81501 (hereinafter the "Property").

Margaret Coleman owned the Property at the time of a March 15, 2021 Lease of the Property to Tenant.

1.2 Plaintiff, Slatner LLC, a Colorado LLC with its principal place of business in Mesa County, CO ("Landlord" or "Slatner"), was the authorized rental agent for Owner when CORRecycling entered into a March 15, 2021, Lease of the Property ("Lease"). A copy of the Lease is attached as **Appendix 1.** The Lease was negotiated, executed, to be performed and was breached in Mesa County, CO.

1.3 Plaintiff, 710 Arrowest, LLC, a Colorado LLC, ("710"), has its principal place of business in Mesa County, CO. 710 provided and continues to provide services, as agent for Owner, including but not limited overseeing: (i) the removal of fire debris from the Property, the removal of environmentally regulated material left on the Property by Tenant;  (ii) re-building improvements on the Property which were destroyed by the Fire; and (iii) handling the accounting for contractor payments.

1.4 When the Lease was entered into and at the time of the Fire, Defendant, CORRecycling ("Tenant"), had its principal place of business in Mesa County, Colorado  and it breached the

2

Lease in Mesa County, CO. Plaintiffs are informed and believe Tenant is still engaged in business in Mesa County, CO.

1.5 Guarantors, Ken and Alexia Burns ("Guarantors") signed and breached their guarantees in Mesa County, CO while they were residents of Mesa County, CO. Plaintiffs are informed and believe that Guarantors are still residents of Mesa County, CO.

1.6. Nationwide Insurance Company, d/b/a Scottsdale Insurance Company, engaged in business in Mesa County, CO by issuing insurance on the Property and breached its insurance obligation in Mesa County, CO. The "Nationwide Insurance" policy is attached as **Appendix 2**.

1.7 Beazley engaged in business in Mesa County CO by issuing insurance on the Property and breached its insurance obligation in Mesa County, CO. The "Beazley Insurance" declaration pages attached as **Appendix 3**.

1.8. American Family Insurance Company engaged in business in Mesa County, CO, issuing insurance on the Property and paying out approximately $1,425,000.00 insurance proceeds, i.e., the policy limits less deductible, on account of the losses Owner suffered as a proximate result of the Fire. In addition, American Family paid approximately $130,000.00 as damages for lost rental income caused by the fire. American Family may claim rights to recoup all or some of the money it paid to Owner from other parties in this action.

B. General Factual Allegations.

1.9. In part performance of its contractual Lease obligations, Tenant was required to pay "Rent" and "Additional Rent", to Owner. The Additional Rent obligation included, but was not limited to obtaining:

3

1.9.1   $1,500,000 of Fire and Casualty Insurance, i.e., the Nationwide Insurance Policy, naming Owner and Landlord as "additional insureds" for the benefit and protection of Owner and Landlord.  Tenant obtained such insurance and named Owner and 710 as additional insured parties, affording them all rights and privileges as any "named insured".

1.9.2 $2,000,000 of environmental insurance, i.e., the Beazley Policy, and being required by the Lease to name Owner and Landlord as "additional insureds", for the benefit and protection of Owner and Landlord, and affording them all rights and privileges as any "named insured", such as the Tenant.  Beazley informed Plaintiffs that tenant failed to name them as "additional insured".  Plaintiffs are informed and believe that Tenant and/or a guarantor did inform Beazley that the insurance was required by the Lease for the protection of the Owner and Landlord, and provide Beazley with a copy of the Lease.

1.9.3.   Plaintiffs are informed and believe that Tenant informed Beazley's agent (who sold the policy to Tenant) that Owner and Landlord were to be named as "additional insured" and the agent was given a copy of the Lease for purposes of obtaining the proper coverage and designating Owner and mortgagee as "additional insureds" under the Beazley Policy.

1.9.4   Nationwide sent Plaintiffs a March 22, 2022 letter, attached as **Appendix 4**, which admitted:

(a) The policy period was May 6, 2021 through May 6, 2022; thus, the policy was in effect at the time of the August 23, 2021 Fire.

(b) The building located on the 710 Arrowest property was covered to the extent of a $1,500,000 limit of insurance, less a $5,000 deductible.

4

(c) The "Additional Insured Endorsement lists 'Margaret Coleman [Owner] and Culpepper Land and Cattle Co, LLC [as Mortgagee]'", with the building Owner [Margaret Coleman] and Mortgagee [Culpepper] being Additional Insureds with respect to coverage for direct physical loss or damage to the building.

(d) The claim was timely reported to Nationwide by CORRecycling on August 23, 2021, the day of the Fire.

(e) Nationwide hired a cause and origin expert to investigate the Fire and Plaintiffs are informed and believe that the cause and origin was determined to be accidental, and not intentional.

(f) The letter claims that Nationwide checks (approximately $500,000.00) were delivered to Owner as preliminary insurance proceeds to allow initial reconstruction to proceed. These checks were sent to Tenant. Owner was entitled to the payments, and Tenant endorsed the checks to Owner. The balance of the money (up to policy limits) needed to repair the Property was never paid by Nationwide.

(g) The letter concluded with the statement: "Scottsdale does not intend to make any further payments to Ms. Coleman [Owner] or CORRecycling at this time". This statement was a material breach of Nationwide's insurance obligation.

(h) True to its March 22, 2022, threat, Nationwide wrongfully denied further payment to the Owner. Such conduct was wrongful as an improper delay and ultimate denial of coverage. C.R.S. 10-3-1116(1).

1.10 Following Nationwide's admission of coverage and with knowledge that Owner and 710 were "additional insured" under the Nationwide Policy, Nationwide violated its insurance

obligation and Nationwide, with full advise of legal obligations, by wrongfully delaying and ultimately denies approximately $1,000,000 of its policy obligations owed to Owner and Slater. Nationwide violated duties imposed by C.R.S. 10-3-116(1).

1.11 Beazley admitted that the Fire did result in damages, injury or loss which fell within the coverage provisions of the Beazley Policy. See Beazley November 8, 2021 letter, attached as **Appendix 5.**

1.12 The Fire left Owner and Landlord subject to damages that were covered by the Beazley Policy. With knowledge of such facts, Beazley wrongfully delayed and ultimately refused to pay any of the damages caused to the Property. Beazley's conduct was wrongful and triggers all sanctions under C.R.S. 10-3-1116(1).

1.13 As a condition to Owner and Landlord's agreement to Lease the property to CORRecycling, Owner, acting through Landlord as authorized agent, required personal guarantees from Ken and Alexia Burns relative to all of CORRecycling's obligations under the Lease. The personal guarantees were negotiated, executed, to be performed and were breached in Mesa County, CO. Copies of the two "Guarantees" are attached as **Appendices 6 and 7.**

C. <u>Lease and Fire.</u>

1.14 Per the Lease, Owner, Landlord and Mortgagee, as additional insureds, were to have a right to enforce the provisions of the Nationwide Policy and the Beazley Policy, and to recover from the insurance companies for all covered damages (to the policy limits) cause by the fire damage, the costs of removing debris, and the cost to repair the Property and its improvements (to the limits of the policies).

1.15 On about August 23, 2021 while the Property was exclusively occupied by Tenant pursuant to the Lease and under Tenant's exclusive custody and control, the Fire (including associated smoke and heat caused damages) destroyed the improvements located on the Property.

1.16 The monetary amount expended by Owner to re-construct the improvements destroyed by the fire, plus removal and replacement of soil contaminated by the Fire (but not including a separate $585,000 of environmental costs of clean up, recycling and disposing of environmentally regulated material) are estimated to exceed $1,500,000.

1.17  Owner obtained an independent policy of insurance on the Property prior to the Lease and maintained it even after the Lease was executed to protect against a tenant failing to timely secure and maintain the Lease required insurance and to protect against the risk of a Tenant selected insurance company failing to pay in a timely manner to facilitate timely repairs.

1.18 Prior to Tenant's Lease or occupancy Owners had obtained a policy of insurance from American Family, with a copy of the policy being attached as **Appendix 8**.  Owner obtained the insurance to protect herself and mortgagee (who required that insurance exist). Owner maintained the American Family insurance even after the Lease was executed because of uncertainty about a new tenant's future compliance with the Lease and timely payment of the premium for the  Lease required insurance.  Neither Tenant, Guarantors, Nationwide, nor Beazley knew of Owner's personal insurance and none of such parties could have or did rely on Owner's insurance in setting the policy limits or premiums charged for the Nationwide or Beazley insurance.

1.19  Prior to the fire, Owner had never seen the Nationwide or Beazley policies of insurance and never agreed that Owner's rights under her separate insurance would be subject to any apportionment with either Nationwide or Beazley.  Had any such "concession" been requested

7

by Tenant (or Nationwide or Beazley), it would have been denied considering that Owner alone had paid all premiums for the American Family policy and (with the mortgagee) was the sole beneficiary of the policy.

1.20  Plaintiffs are informed and believe that Tenant and/or Guarantors gave Nationwide and Beazley timely notice of the Fire, and Owner also gave timely notice of the Fire to Nationwide and Beazley.

1.21  The Costs of All Repairs (**Appendix 10**) is estimated at $1,570,000.00, not including $585,000.00 for environmental related clean up, transportation and recycling (or disposal) of Tenant's recycling material. Such costs should be reduced by the cost of 4 evaporative coolers (which were not present at the time of the fire but were necessary to bring the building up to current standards) and less some electrical expenses associated with the inclusion of a second "3 phase electrical service" at estimated collective cost of less than $50,000.

1.22  In addition to actual costs to repair/reconstruct the Fire destroyed improvements on the Property, the Fire resulted in the need to remove, transport and recycle environmentally regulated material and fire debris as unavoidable condition precedent to rebuilding/repairing Fire damaged improvements on the Property. Plaintiffs incurred $585,529.00 of environmental related expenses as a direct result of the Fire. See **Appendix 9** for environmentally regulated work, transportation charges, and disposal/recycling expenses.  Per C.R.S. 10-3-1116(1). Beazley is liable for a total of approximately $1,205,000, plus attorney fees and pre-and post-trial interest.

1.23  The Fire, caused by Tenant, resulted in Owner's loss of rent under due from Tenant under the Lease. Nationwide, as the Tenant's fire insurance carrier for the Property, is jointly and severally liable to the Owner for such damages. Lost rent is estimated at $350,000.

8

1.24 But for Tenant obtaining both the Nationwide and Beazley insurance policies, Owner and Landlord would never have approved nor entered into the Lease with Tenant because of the type of business that Tenant proposed for the Property and Tenant's lack of liquid assets, should a casualty loss occur. Owner relied on Nationwide and Beazley insurance in entering into the Lease.

1.25 Owner and Landlord are informed and believe that Tenant gave timely notice of the Fire and filed claims with both Nationwide and Beazley under their respective policies of insurance. The Owner also gave timely notice once it received information about how to contact the two insurance companies. Nationwide timely investigated the Fire and made initial disbursement under its insurance obligations.

    1.25.1 Plaintiffs cooperated with Nationwide by timely making the Property available for inspection by Nationwide's chosen fire investigator(s) and estimators and otherwise performed all obligations necessary to collect under the terms of the Nationwide policy.

    1.25.2 Plaintiffs are informed and believe that Nationwide represented to Tenant that Nationwide's three (3) payments were "initial payments" to allow work to commence and that the full amount due under the Nationwide Insurance policy would be paid as actual costs were incurred to complete the repairs/reconstruction of the Fire damaged property.

    1.25.3 Plaintiffs' collective cooperation lead to Nationwide making three initial payments approximately $500,000.00. Thereafter, Nationwide delayed and ultimately denied payment of the approximate $990,000 balance of its policy limits, thus affording Owner all rights under C.R.S. 10-3-1116(1).

1.26 The collective conduct of Nationwide and Beazley left Owner with inadequate funds to pay for all the repairs needed to reconstruct or replace improvements destroyed by the Fire, i.e., an estimated $1,575,000; plus pay the $585,000 necessary to remove the fire debris and environmentally regulated material left by Tenant that prevented reconstruction.

1.27  Plaintiffs were never requested to nor did any of them release Tenant, Guarantors, Nationwide or Beazley from their collective obligation to pay for all Fire caused building and environmental damages, with Nationwide's and Beazley's liability limited to applicable policy limit, less deductible until their conduct triggered C.R.S. 10-3-1116(1) sanctions.

1.28 Nationwide falsely informed Owner and 710 that as the cleanup and reconstruction proceeded, Nationwide would timely make additional reimbursement payments as needed to complete the repair and restore the building to a pre-Fire condition, but not to exceed policy limits and less the deductible.

1.29 By March 22, 2022 letter from Nationwide's legal counsel, Nationwide finally admitted its intent to not honor its insurance obligations as set forth in the Nationwide Policy.

1.30  The acts and omissions of Nationwide and Beazley have caused Plaintiffs, Tenants and Guarantors to be wrongfully entangled in this litigation.

1.31  Plaintiffs performed all conditions precedent to recover damages for:

    1.31.1 The Tenant's breach of the Lease (damages of approximately $500,000);

    1.31.2 Guarantor's  breach of their guarantees;

    1.31.3 Nationwide's breach of its contractual insurance obligations owed to Owner and 710, as additional insureds; and

1.31.4 Beazley's breach of its insurance obligations owed to Owner, Landlord and Culpepper as intended third party beneficiaries of the Beazley insurance policies that Tenant was obligated to provide as Additional Rent due to Landlord and Owner under the Lease.

## II. FIRST CLAIM FOR RELIEF
### (Breach of Contract against Tenant and Guarantors)

1.1 Plaintiffs re-allege all General Allegations.

1.2 Tenant entered into the Lease with Landlord which was acting as disclosed agent for the benefit of the Owner.

1.3 Tenant breached the Lease by: (i) failing to pay Rent and Additional Rent; (ii) negligently destroying the improvements on the Property by fire, smoke damage and causing environmental damages, (iii) failing to restore the improvements to a pre-fire condition, (iv) failing to list Landlord and Owner as clear additional insureds on the Beazley Policy; (iv) failing to reimburse Landlord and Coleman for costs they incurred to repair and reconstruct improvements destroyed by the Fire; and (vi) violating various other Lease provisions.

1.4 Guarantors breached their guaranty obligations by failing to cure or satisfy all the Lease obligations breached by the Tenants as required by the Guaranty Agreements attached as Appendices 6 and 7 to this Complaint.

1.5 Slatner and Owner complied with all Lease terms, performed all their obligations under the Lease, and performed all conditions precedent to recovery from Tenant and Guarantors all damages Owner incurred as a result of the Fire.

1.6 The Fire damage caused by Tenant damaged Owner in an estimated amount of $2,155,000, with the exact amount to be proven at trial.

1.7  The Tenant defaulted on paying the Rent and Additional Rent required by the Lease, which damaged Owner by an estimated $600,000, the exact amount to be proven at trial.

1.8  Landlord and Owner are entitled to recover their reasonable attorney fees and costs per the Lease, the exact amount to be proven in post-trial proceedings.

1.9  Landlord and Owner are entitled to costs and pre and post judgment interest from the time the money was due following the Fire.

1.10  Tenant and Guarantors are jointly and severally liable for all of the above damages.

### III.  SECOND CLAIM FOR RELIEF
### (Breach of Contract against Nationwide)

2.1  Plaintiffs re-allege all General Allegations.

2.2.  Owner, as a named "Additional Insured" in the Nationwide insurance policy, is entitled to all rights, benefits, and insurance payments for Fire damage.

2.3  Nationwide investigated the Fire Origin, the resulting damages (with follow up inspections occurring as it wished and over months), determining that Nationwide owed a duty as an insurer to Owner as a named insured party.  Consistent with that determination, Nationwide, on three occasions, paid insurance benefits, which collectively totaled slightly more than $500,000, as initial payments to allow repairs to proceed. These initial payments were made with the express understanding and assurance from Nationwide to Owner that when Owner's actual repair expenses exceeded the initial payments, such additional expenses would be promptly re-imbursed to Owner by Nationwide, up to the $1,500,000 (less deductible) policy limits.

2.4  The repair expenses have exceeded $1,500,000 but when Nationwide was informed of that fact, Nationwide wrongfully advised Owner that Nationwide was refusing further payments under the $1,500,000 the Nationwide insurance policy.

2.5 At no time did Owner release Nationwide of any liability under the $1,500,000 Nationwide insurance policy.

2.6  The costs of reconstruction were approximately $1,575,000 (not including in that number the $585,000 expenses to remove environmentally regulated material and fire debris that had to be removed to allow reconstruction to proceed). The total expenses to reconstruct the Fire destroyed building exceed both the Nationwide initial payments and its policy limits. When Nationwide and its attorneys were made aware of the anticipated total costs, Nationwide unilaterally and wrongfully delayed and ultimately denied further payout of insurance proceeds under its $1,500,000 policy.

2.7 Owner is informed and believes that Nationwide has correctly not paid any insurance proceeds to Tenant, but Nationwide has wrongfully refused to pay Owner approximately $990,000 of the policy limits. Nationwide's conduct was wrongful and breached Nationwide's Policy and its assurances, given at the time of the interim approximate $500,000 payments, that Nationwide would pay out more of the Policy amount when the actual reconstruction costs exceeded the interim payments.

2.8  Total damages caused by the Fire, including costs to clear the site to allow reconstruction following the Fire and the costs of reconstruction are approximately $1,575,000, plus approximately $585,000 for removal of environmentally regulated material and fire debris, plus $350,000 of estimated net lost rental income.  The rental income loss is continuing to this day as the Property remains vacant despite continuing efforts to rent the Property.

2.9  Nationwide's wrongful delay and ultimate wrongful denial of Owner's first party claim under the Nationwide insurance policy affords Owner and 710 all rights and remedies statutorily authorized by C.R.S. 10-3-1116(1). Such damages are estimated at $990,000 (the amount remaining due from unpaid Nationwide insurance policy), plus twice that amount per the statutory provision, i.e. $1,980,000, plus all attorney fees and cost to collect such sums.

2.10  At all times subsequent to Nationwide insuring Owner against damage to her building, Nationwide owed Owner a duty of good faith, including timely adjusting the Fire claim and advancing (up to the policy limit, less deductible) the actual costs of fire debris clean-up and reconstruction. Nationwide breached its duty of good faith when its attorney unilaterally decided that Nationwide would not pay the full insurance claim.

2.11  Owner would never have allowed Tenant to take occupancy of the Property had anyone suggested that Tenant would only provide $500,000 of Property insurance.

2.12  From and after approximately Spring of 2022, the Property had been "cleared" sufficiently to confirm that the monetary amount of Fire damages greatly exceeded $500,000. Despite this knowledge and knowledge that the Owner was owed significantly more than the approximate $500,000 advances, Legal Counsel for Nationwide wrongfully and unreasonably refused to payout any more of the Nationwide $1,500,000 insurance to Owner.

2.13  Nationwide's attorney basically claimed Nationwide could charge Tenant a full premium for $1,500,000 of insurance coverage, which was a condition precedent to Owner leasing the Property to Tenant, and Nationwide could later unilaterally reduce its insurance limits to approximately $500,000, allegedly based on Owner's dealings with a third party insurance carrier. Moreover, Nationwide and Tenant were unaware of any third-party insurer of Owner at

14

the time the Lease was negotiated for $1,500,000 of insurance and Nationwide's issuance of its $1,500,000 Policy of insurance for Tenant and Owner.

2.14 Nationwide's attorney, as agent for Nationwide and acting in the capacity as such agent, intentionally interfered with the Lease and insurance contract between Tenant and Nationwide. Such wrongful interference has entangled Tenant (and guarantors) and Owner in the ligation set forth in this Complaint.

2.15 Owner and Tenant never amended the Lease to reduce Tenant's Property insurance obligation to less than $1,500,000, as is required in the Lease and Nationwide never gave any pre-claim notice to Owner or Tenant that Nationwide was unilaterally reducing its coverage to approximately $500,000.

2.16  Owner is entitled to recover from Nationwide all sums authorized in  C.R.S. 3-6-1116; being the unpaid balance of the claim (approximately $990,000); two times the approximate $990,000, plus attorney fees and costs (as determined in post-trial proceedings).

2.17   Owner is entitled to pre and post judgment 8% per annum statutory interest on all damages from the time the money was due from Nationwide to Owner.

## IV.  THIRD CLAIM FOR RELIEF
### (Third-party Beneficiary Claim vs BEAZLEY SERVICES, INC. USA, SYNDICATES 623 AND 2623 at Lloyds, London)

3.1  Plaintiffs re-allege the prior allegations.

3.2  Beazley insured Tenant in the amount of $2,000,000 against damages Tenant and Owner might incur as a result of a fire.

3.3 Beazley, by written admission (see Beazley's November 8, 2021 letter, Appendix 5) has admitted that its $2,000,000 Policy affords coverage for Fire damages that have now been quantified at $585,000.

3.4 Owner is informed and believes that Beazley is liable for approximately $585,000 of the damages caused by the fire, such damages being the expenses associated with the handling, shipping, and disposing of environmentally regulated material that was damaged by the Fire and which had to be removed from the Property to allow reconstruction to occur.

3.5 Owner is informed and believes that Beazley was advised of the Lease and knew or should have known that the Lease obligated Tenant to obtain $2,000,000 of environmental insurance against the type of damages suffered as a consequence of the Fire; naming Owner as an additional insured under the policy.

3.6 Owner is informed and believes that as a result of error on the party of Tenant, Guarantors or Beazley, Owner's name was inadvertently omitted from the Beazley policy, despite Owner being an intended third-party beneficiary of the Beazley Insurance policy.

3.7 Owner is informed and believes that Beazley saw a copy of the Lease as part of the underwriting of the Beazley Insurance that Tenant was applying to obtain and was ultimately issued to Tenant.

3.8 Owner, as the intended third-party beneficiary of the Beazley Policy, is entitled to all rights and privileges of an additional insured under the Beazley Policy, as was the collective intent of Tenant, Guarantors, Owner and Beazley at the time the Policy was issued.

3.8. The Fire caused approximately $585,000 of damages that are within the scope of the Beazley Insurance policy coverage. Tenant and Guarantors are liable to Owner (per the Lease) for such damages.

3.9 Beazley has wrongfully delayed and denied insurance payments due to Owner. Beazley owes all sums required by C.R.S. 10-3-1116(1).

3.10 Alternatively, Tenant and Guarantors are liable to Owner (per the Lease) for all fire damage.

3.11. The Beazley insurance policy obligates Beazley to pay Tenant's damages that are covered by the Beazley policy. Such damage consists of the environmental damage previously alleged.

3.12 Neither Tenant nor Beazley has compensated Owner for any of the environmental damage incurred by Owner as a result of the Fire.

3.13 Owner has direct third-party beneficiary claim against Beazley and/or a right to collect from Tenant, which is then entitled to insurance coverage from Beazley for all sums due to Owner's for environmental damages.

3.14 Beazley is indebted to directly to Owner, as an intended third-party beneficiary, for all C.R.S. 10-3-1611(6) damage sanctions.

## V.  FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment involving American Family Insurance Company Policy of Insurance)

4.1.  Plaintiffs re-allege the General Allegations.

4.2  American Family Insurance Company issued a $1,450,000 policy of insurance in approximately April of 2021, at a time prior to Owner meeting Tenant and prior to any negotiations for Tenant's Lease of the Property.

4.3 Nothing in the Lease relates or refers to the American Family Insurance and nothing in the American Family Insurance policy references the Lease or alters the terms or coverage of the American Family Insurance.

4.4 No premium adjustment or discount was afforded to Owner by American Family because of any other potential insurance in the future acquired by an unknown potential renter of the Property.

4.5  Owner paid the full American Family Insurance premiums in advance in consideration of American Family affording Owner $1,450,000 of fire and other insurance coverage for the Property. The Property was bound and insured without disclosure of any condition that a claim on the Policy could be reduced by a then non-existing, third-party obtained insurance on the Property.

4.6  Owner never assigned to American Family any or its potential rent or "additional rent" that may be unpaid under the Lease and due from a future tenant of the property.

4.7  No defendant has a right to any of the benefits afforded to or received by Owner on account of the American Family Insurance or funds paid by American Family on account of the Fire damages.

4.8  Owner requests a declaratory judgment as to Owner, American Family and all other parties' rights as to any American Family or Nationwide payments for the fire damage.

THEREFORE, Plaintiffs request the following Relief.

1. An award of damages against Tenant, CORRecycling and Guarantors, Ken Burns and Alexia Burns, for such damages as are awarded by a jury, plus attorney fees costs per the Lease, and pre and post judgment interest.

2. An award of damages against Nationwide Insurance Company, d/b/a Scottsdale Insurance, for such damages as are awarded by a jury, plus C.R.S. 3-6-1116 statutory damages, attorney fees costs and pre and post judgment interest.

3. An award of damages against BEAZLEY SERVICES, INC. USA, SYNDICATES 623 AND 2623 at Lloyds, London for such damages as are awarded by a jury, plus C.R.S. 3-6-1116 statutory damages, attorney fees costs and pre and post judgment interest.

4. A declaratory judgment as to the rights of Owner and all Defendants relative to insurance proceeds paid or to be paid by American Family, Nationwide and Beazley and such other relief as this Court declares.

## JURY DEMAND

Plaintiffs Request that the First Three Claims For Relief (Against Tenant, Guarantors, Nationwide and Beazley) be Tried To a Jury. Plaintiffs submit and hereby pay the requisite Jury Fee.

Respectfully submitted this 22 day of August 2023

Coleman and Quigley LLC

/s/Joseph Coleman
By Joseph Coleman

Plaintiff's Address

710 Arrowest Road
Grand Junction, CO 81505